# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ACE AMERICAN INSURANCE CO., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:20-CV-01347-JAR |
| | ) |
| AERCO INTERNATIONAL, INC., and | ) |
| BLACKMORE AND GLUNT, INC., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant AERCO International, Inc.'s ("AERCO") Motion for Judgment on the Pleadings. (Doc. 36). The motion is fully briefed and ready for disposition. For the reasons discussed below, the motion will be denied.

## I.   BACKGROUND

This Court has previously summarized the relevant background facts in this case:

Plaintiff ACE American Insurance Company ("ACE") is the assignee of a joint venture ("JV") between Walsh Construction Company II, LLC and Alberici Constructors, Inc. (Doc. 1 at ¶ 1). As alleged in Plaintiff's Complaint, the United States Department of Veterans Affairs awarded the JV a contract to construct a medical clinic ("Clinic") at the Jefferson Barracks complex ("Jefferson Barracks") in St. Louis, Missouri. (*Id.* at ¶¶ 8-10). The JV purchased two AERCO Model B+II WaterWizard water heaters for installation at the Clinic. (*Id.* at ¶¶ 11-13). Defendant Blackmore & Glunt, Inc. ("B&G") delivered, inspected, and started up the water heaters on or about March 9, 2018. (*Id.* at ¶¶ 13, 15). DeLuca Plumbing, LLC, a subcontractor of the JV, installed the water heaters. (*Id.* at ¶ 14).

On June 16, 2018, at approximately 2:00 A.M., the JV's project manager received a call informing him that it was "raining inside the clinic." (*Id.* at ¶ 22). The manager discovered that an electronically controlled release valve on the AERCO water heater was discharging hot water, causing substantial damage to the property. (*Id.* at ¶¶ 23-24). After another malfunction a few months later, Defendants agreed to replace the defective heater under warranty. (*Id.* at ¶¶ 26-30). ACE, as insurer of

the JV, paid out $3,999,770.92 for losses in connection with the June 26, 2018 flooding. (Doc. 32 at 1-2).

On September 25, 2020, ACE filed suit in this Court against AERCO and B&G seeking this subrogated amount and other uninsured losses pursuant to the following counts: Product Liability (Count I); Negligence (Count II); Breach of Warranty (Count III). (Doc. 1). AERCO moved for judgment on the pleadings on the grounds that, at the time Jefferson Barracks became a federal enclave, Missouri law did not recognize such claims against a remote product manufacturer. (Docs. 16-17). This Court held that Jefferson Barracks became a federal enclave in 1892 and proceeded to dismiss Counts I and III with prejudice because the JV's "lack of contractual privity with AERCO precludes any claim for product liability or breach of warranty under Missouri law as it existed in 1892." (Doc. 32 at 12). As to Plaintiff's negligence claim, this Court granted Plaintiff leave to amend its complaint because "there is a genuine dispute as to the relationship between AERCO and B&G." *Id.* at 11. Plaintiff timely filed a First Amended Complaint ("FAC") alleging negligence and vicarious liability against AERCO. (Doc. 33 at ¶¶ 47-65). On April 15, 2021, AERCO filed the instant motion for judgment on the pleadings seeking dismissal of Count II of the First Amended Complaint. (Doc. 36).

## II.   LEGAL STANDARD

In deciding a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), the Court "accept[s] all facts pled by the nonmoving party as true and draw[s] all reasonable inferences from the facts in favor of the nonmovant." *Waldron v. Boeing Co.*, 388 F.3d 591, 593 (8th Cir. 2004) (citations omitted). This is a "strict standard, as 'judgment on the pleadings is not properly granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law.'" *Unite Here Local 74 v.*

*Pinnacle Entm't, Inc.*, No. 4:10-CV-00747 ERW, 2011 WL 65934, at *2 (E.D. Mo. Jan. 10, 2011) (quoting *United States v. Any and All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000)); *see also Stewart v. City of St. Louis*, No. 4:04-CV-885 RWS, 2006 WL 389837, at *1 (E.D. Mo. Feb. 17, 2006) (citation omitted) ("The motion for judgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court."). Ultimately, a motion for judgment on the pleadings is governed by the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Clemmons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir. 2009).

### III.   DISCUSSION

The federal enclave doctrine provides that "when an area in a State becomes a federal enclave, only the [state] law in effect at the time of the transfer of jurisdiction continues in force as surrogate federal law." *Parker Drilling Mgmt. Servs., Ltd. v. Newton* 139 S. Ct. 1881, 1890 (2019) (internal quotations omitted); *see also* U.S. Const., Art. I, § 8, cl. 17 (the "Enclave Clause"). This Court previously held that Jefferson Barracks became a federal enclave in 1892 when the Missouri General Assembly expressly ceded exclusive jurisdiction to the United States. (Doc. 32 at 3-6). Accordingly, the question before this Court is whether, accepting facts alleged in the FAC as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has stated a plausible claim against AERCO for negligence under 1892 Missouri law.

####   A.   Relationship Between the Parties

AERCO designs, manufacturers, and distributes hot water heating equipment, including the Model B+II WaterWizards at issue in this case. (Doc. 33 at ¶ 11). AERCO and B&G are parties to a Sales Representative Agreement (the "Agreement"), executed February 6, 2017,

pursuant to which AERCO appointed B&G as its exclusive sales representative in a territory including Missouri. (Doc. 36-2 at § 1).[1] Under the terms of the Agreement, B&G promised to "exercise its best efforts to promote the sale, validate proper installation & start-up and provide post sale support to AERCO customers and products sold by [B&G]." (*Id.* at § 3). B&G would "[b]e responsible for the supervision and documentation of the installation and start-up" of the AERCO products it sold. (*Id.* at § 3(f)). B&G received a commission from AERCO for each sale (*Id.* at § 11), but customer orders would be directed to AERCO, subject to AERCO's acceptance, and invoiced by AERCO. (*Id.* at § 7). AERCO also agreed that it would provide B&G various sources of information and accept B&G sales personnel at its headquarters for training in the application, sale, and servicing of AERCO products. (*Id.* at § 4).

Section 12 of the Agreement attempts to explicitly delineate the legal relationship between AERCO and B&G:

> It is hereby expressly understood and agreed that [B&G] is strictly an independent contractor who has the right to inform the public that it represents AERCO for the solicitation of business as provided herein. No relationship of master and servant or of employer and employee now exists between AERCO and [B&G], or between AERCO and [B&G's] sub-contractors, agents or employees, if any, or is so created by this Agreement, and AERCO shall exercise no control over the activities and operations of [B&G] except as specifically covered by this Agreement.
>
> Nothing in this Agreement shall constitute [B&G] as a general agent of AERCO, and in no event shall [B&G] have the authority to act for or to commit AERCO in

---

[1] AERCO attached the Agreement to its Answer to the FAC. (Doc. 34-1). The FAC makes multiple references to AERCO and B&G's obligations under the Agreement. (Doc. 33 at ¶¶ 12, 18, 48-52). This Court agrees with AERCO that the Agreement is accordingly embraced by the pleadings and may be considered on this motion. *See Mickelson v. Cty. of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016) ("We may consider materials that necessarily are embraced by the pleadings.").

Plaintiff does not argue that the FAC fails to embrace the Agreement. But Plaintiff notes that they based their FAC on a 2012 Sales Representative Agreement (the "2012 Agreement") produced by B&G in discovery. (Doc. 37 at 2 n.3; Doc. 37-3 at 6-31). Because both parties have briefed this motion by reference to the Agreement, which is substantially similar to the 2012 Agreement, this Court will proceed under the assumption that the Agreement was operable at the time of the alleged negligent acts.

>any matter, cause, or thing whatever without the prior written consent of AERCO either hereunder or otherwise, or to use AERCO's name in any way not specifically authorized by this Agreement.

As alleged in the FAC, B&G delivered the two AERCO Model B+II WaterWizard water heaters to the Clinic for installation. (Doc. 33 at ¶ 13). Dennis Hischke, an agent, servant, or employee of B&G, inspected and started up the water heaters on or about March 9, 2018. (*Id.* at ¶ 15). Throughout the FAC, Plaintiff alleges that various actions concerning the servicing and ultimate replacement of the water heaters were performed by both AERCO and B&G. (*Id.* at ¶¶ 27-29, 32). The precise nature of the relationship between the JV, B&G, and AERCO is critical to resolution of Plaintiff's negligence claim.

### B. Applying 1892 Missouri Law

"Actions for negligence are for breaches of duty." *Huset v. J.I. Case Threshing Mach. Co.*, 120 F. 865, 867 (8th Cir. 1903). The breadth of duties owed by product manufacturers has substantially expanded since 1892. *See generally* David G. Owen, *The Evolution of Products Liability Law*, 26 REV. LITIG. 955, 962 (2007). As the Eighth Circuit noted in *Huset*, decided in 1903, the "general rule is that a contractor, manufacturer, or vendor is not liable to third parties who have no contractual relations with him for negligence in the construction, manufacture, or sale of the articles he handles." *Huset*, 120 F. 865 at 867-68 (citations omitted); *see also Gordon v. Livingston*, 12 Mo.App. 267, 273 (Mo. Ct. App. 1882) ("There would be no bounds of actions and litigious intricacies, if the ill effects of the negligence of men could be followed down the chain of results to the final effect."). Per *Huset*, it would initially appear that AERCO successfully insulated itself from liability for any negligence by executing customer orders through B&G, its exclusive sales representative.

When conceiving of remote product manufacturers' duties, however, Missouri courts consistently presumed that the manufacturer lacked any relationship with the victim or further control over the equipment at issue. *See Heizer v. Kingsland & Douglass Mfg. Co.*, 19 S.W. 630, 632 (Mo. 1892). *Losee v. Clute*, approvingly cited by the Missouri Supreme Court in *Heizer*, is particularly instructive as it concerns a malfunctioning boiler. 51 N.Y. 494 (N.Y. Ct. App. 1873). In *Losee*, the manufacturer sold a boiler to Saratoga Paper Company; the boiler exploded, and nearby property owners who suffered damages sued the manufacturer. The New York Court of Appeals upheld dismissal of the manufacturer on the grounds that they "contracted with [Saratoga Paper Company], and did what was done by them for it and to its satisfaction, and when the boiler was accepted they ceased to have any further control over it or its management, and all responsibility for what was subsequently done with it devolved upon the company and those having charge of it." *Id.* at 496. In the independent contractor context, the Missouri Supreme Court noted that the hirer is insulated from liability because they "parted with the whole control over the work and workmen." *Morgan v. Bowman*, 22 Mo. 538, 549 (1856); *see also Roddy v. Missouri Pac. Ry. Co.*, 104 Mo. 234 (1891) (emphasis added) ("It is now well established that the employer of a contractor is not responsible for the negligence of the contractor or his servants in case the contractor is given *entire freedom* in the use of means to accomplish the result.").

In *Horner v. Nicholson*, however, the Missouri Supreme Court considered a suit against a building owner for damages caused by a falling wall. 56 Mo. 220 (1874). The owner blamed an employee of a contractor for the incident. The court affirmed the jury's verdict against the owner, noting that "if defendant's plans of re-building, as recommended by his architect, required the use of materials and structures that were unsafe, his responsibility, for any injury

accruing by reason of such plans, was not transferred to the contractors." *Id.* at 222; *see also Lancaster v. Connecticut Mut. Life. Ins. Co.*, 92 Mo. 460 (1887) ("If the negligence which produced the injury was not in the workmanship, or the materials to be furnished by the contractors, but in the plans and specifications, then the defendant cannot be relieved from liability, or shift the responsibility to the contractors.").

Under late nineteenth century Missouri tort law, manufacturers owed no duty to end users or unforeseeable victims of their products with whom they lacked contractual privity, provided that the manufacturer (1) ceased exercising control over the product and (2) had not specifically limited a contractor to the plans and specifications at issue (among other exceptions not relevant here). In short, there are some factual scenarios under which a product manufacturer could be held liable for negligence despite the use of a sales representative as a contractual intermediary. Given the limited facts available at this juncture, this Court cannot say that AERCO escapes liability for negligence as a matter of law.

As discussed above, AERCO may have retained some control over customer orders pursuant to the Agreement. (Doc. 36-2 at § 7). AERCO made various product publications available to B&G and may have trained B&G personnel. (*Id.* at § 4). The Agreement provides that AERCO would "provide formal submittals 'for approval' and/or 'record' of any certified drawings which are a stipulated requirement of any customer's orders." (*Id.*). Plaintiff specifically claims in the FAC that Hischke utilized a boilerplate AERCO form to ensure proper installation of the water heaters, a key allegation. (Doc. 33 at ¶ 16). Plaintiff further alleges that both AERCO and B&G agreed to replace the water heater under warranty (*Id.* at ¶ 32), which is consistent with the terms of the Agreement. (Doc. 36-2 at § 7). Accepting all facts in the FAC as true and drawing all reasonable inferences in Plaintiff's favor, AERCO did not simply place its

product in the chain of commerce and "cease to have further control over it and its management." *Losee*, 51 N.Y. at 496.

AERCO offers two arguments which supposedly establish absolute defenses to Plaintiff's negligence claim. First, AERCO contends that it cannot be held liable for Hischke's negligence because Hischke could only serve one master in B&G, his employer. There is precedent supporting AERCO's claim. *See Clark's Adm'x v. Hannibal & St. J.R. Co.*, 36 Mo. 202, 218 (1865) (citation omitted) ("The principle of *respondeat superior*, in such case applies to the sub-contractor only; as between him and . . . his employees, the relation of master and servant exists and it ceases with him. There cannot be but one responsible master for the same servant, and where that relation ceases, the liability ceases also.").

This Court lacks meaningful information regarding the cause(s) of the water heater malfunction. This creates a genuine issue of material fact, as it is not apparent to this Court that all fault can be thrust upon Hischke. In the FAC, Plaintiff alleges that AERCO knew the water heater was defective and made misrepresentations regarding the installation process. (Doc. 33 at ¶¶ 54-58). AERCO makes essentially the same argument as the defendant in *Horner* – it cannot be held liable for the negligence of a contractor's employee. But *Horner* and other cases cited above make perfectly clear that AERCO can potentially be held liable depending on the particular factual circumstances. The fact that Hischke can only serve one master does not mandate judgment on the pleadings as to Plaintiff's negligence claim against AERCO.

Second, AERCO claims that the Agreement clearly establishes B&G's role as an independent contractor and disavows any general agency relationship. (Doc. 36-2 at § 12). *See Fink v. Missouri Furnace Co.*, 10 Mo. App. 61, 65 (Mo. Ct. App. 1881) ("Upon this question the contract between the defendant and the immediate actor must generally speak with conclusive

force."). This Court has determined, however, that B&G's status as an independent contractor does not necessarily preclude holding AERCO liable for negligence. As the Missouri Supreme Court explained in *Brannock v. Elmore*, where evidence "tends to prove that the negligence which caused the injury was the result of executing the work in the manner contemplated by the parties in making the agreement . . . defendant cannot relieve himself of liability or shift responsibility to the contractor." 21 S.W. 451, 453 (Mo. 1893) (internal quotation omitted). Plaintiff has plausibly alleged that "AERCO is liable because it controlled the methods and manner of work." (Doc. 37 at 10).

Under 1892 Missouri law, product manufacturers could only be held liable for injuries to third parties with whom they lacked privity in limited circumstances. Plaintiff argues that AERCO controlled the manner and means of B&G's sale and installation of the water heaters, and it was AERCO's negligence in the course of exercising such control that resulted in the damages at issue. As the Missouri Supreme Court explained in *Horner*, the evidence in cases like these "is very contradictory, somewhat obscure, and consists very much of opinions of architects, mechanics and workmen, who differ very much in regard to the causes of the disasters. There is no question of law involved." 56 Mo. at 225-26. At this early stage of litigation and given the limited facts at hand, judgment as a matter of law is not warranted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant AERCO's Motion for Judgment on the Pleadings (Doc. 36) is **DENIED**.

Dated this 19th day of July, 2021.

                                                                             JOHN A. ROSS
                                                                             UNITED STATES DISTRICT JUDGE