**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| ACE AMERICAN INSURANCE CO., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AERCO INTERNATIONAL, INC., and ) <br> BLACKMORE AND GLUNT, INC., ) <br> ) <br> Defendants. ) <br> ) <br> -------------------------------------------------------  ) <br> ) <br> BLACKMORE AND GLUNT, INC. ) <br> ) <br> Third-Party Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DELUCA PLUMBING, LLC, CHRISTNER, ) <br> INC., and IMEG CORP., formerly KJWW ) <br> CORP., ) <br> ) <br> Third-Party Defendants. ) | Case No. 4:20-CV-1347 |

**MEMORANDUM AND ORDER**

This matter is before the Court on Third-Party Defendants Christner, Inc. and IMEG Corp.'s Joint Motion to Dismiss. (Doc. 72). The motion is fully briefed and ready for disposition. For the reasons discussed below, the motion will be denied.

**I.    BACKGROUND**

Plaintiff ACE American Insurance Company ("ACE") is the assignee of a joint venture ("JV") between Walsh Construction Company II, LLC and Alberici Constructors, Inc. (Doc. 33 at ¶ 1). As alleged in Plaintiff's First Amended Complaint, the United States Department of Veterans

Affairs ("VA") awarded the JV a contract to construct a medical clinic ("Clinic") at the Jefferson Barracks complex ("Jefferson Barracks") in St. Louis, Missouri. (*Id.* at ¶¶ 8-10). The JV purchased two AERCO Model B+II WaterWizard water heaters for installation at the Clinic. (*Id.* at ¶¶ 11-13). Defendant Blackmore & Glunt, Inc. ("B&G") delivered, inspected, and started the water heaters on or about March 9, 2018. (*Id.* at ¶¶ 13, 15). Third-Party Defendant DeLuca Plumbing, LLC ("DeLuca"), a subcontractor of the JV, installed the water heaters. (*Id.* at ¶ 14).

On June 16, 2018, at approximately 2:00 A.M., the JV's project manager received a call informing him that it was "raining inside the clinic." (*Id.* at ¶ 22). The manager discovered that an electronically controlled release valve on the AERCO water heater was discharging hot water, causing substantial damage to the property. (*Id.* at ¶¶ 23-24). After another malfunction a few months later, Defendants agreed to replace the defective heater under warranty. (*Id.* at ¶¶ 26-30). ACE, as insurer of the JV, paid out $3,999,770.92 for losses in connection with the flooding. (Doc. 32 at 1-2).

On September 25, 2020, ACE filed suit in this Court against AERCO and B&G seeking this subrogated amount and other uninsured losses pursuant to the following counts: Product Liability (Count I); Negligence (Count II); Breach of Warranty (Count III). (Doc. 1). Ruling on AERCO's initial Motion for Judgment on the Pleadings, this Court held that Jefferson Barracks became a federal enclave in 1892 and dismissed Counts I and III with prejudice because the JV's "lack of contractual privity with AERCO precludes any claim for product liability or breach of warranty under Missouri law as it existed in 1892." (Doc. 32 at 12).[1] The Court denied a second

---

[1] The Court notes that the parties' briefing ignores the prior analysis regarding the federal enclave doctrine. (Doc. 32 at 6). Considering the parties have not addressed the issue, the Court will apply current Missouri law to this Motion to Dismiss while reserving the possibility that Missouri law as it existed in 1892 should apply to B&G's contribution claims pursuant to the federal enclave doctrine.

Motion for Judgment on the Pleadings again seeking to dismiss ACE's negligence claim against AERCO. (Doc. 43).

On November 30, 2021, this Court granted B&G leave to file a third-party complaint ("TPC") against DeLuca, Christner, Inc. ("Christner"), and IMEG Corp. ("IMEG"). (Doc. 50). DeLuca is the plumbing company which installed the water heaters. Christner is an architectural design firm retained by the VA under separate contract. IMEG is an engineering consultant firm hired by Christner as a subcontractor to advise regarding certain mechanical, electric, and plumbing design matters. (Doc. 33 at ¶ 14; Doc. 73 at 2). B&G seeks contribution from each Third-Party Defendant on the grounds that such party's negligence contributed to the damages sustained by ACE. B&G specifically claims that DeLuca was negligent in its installation and management of the water heaters (Count I), while Christner (Count II) and IMEG (Count III) were negligent in their design of the second floor mechanical room at the Clinic. (Doc. 51). Christner and IMEG (collectively "Movants") contend that B&G's claims against them fail as a matter of law pursuant to the "no privity-no duty" rule and economic loss doctrine. (Doc. 73 at 5).

## II.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations omitted). When ruling on a motion to dismiss under Rule 12(b)(6), the district court must "accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).

### III. DISCUSSION

The facts underlying this motion to dismiss are straightforward. The Clinic flooded on or about June 16, 2018, causing nearly $4 million in damages. (Doc. 33 at ¶ 24, 36). ACE, as assignee of the JV, alleges that defective AERCO water heaters sold and delivered by B&G caused the flood. B&G denies any fault for the flood but in the alternative seeks contribution for any liability owed to ACE from DeLuca, Christner, and IMEG. As to Movants specifically, B&G alleges that they failed to properly design the Clinic's second floor mechanical room to "slope to the drain" or include a "curb around the floor drain." (Doc. 51 at ¶¶ 12, 18).

Under Missouri law, "[w]hen two or more persons become liable in tort to the same person for the same harm, there is a right of contribution among them." *Gramex Corp. v. Green Supply, Inc.*, 89 S.W.3d 432, 442 (Mo. banc 2002) (citation omitted). The right of contribution "is based on proportionately dividing the plaintiff's overall damage figure according to the parties' degree of fault." *Union Elec. Co. v. Metro. St. Louis Sewer Dist.*, 258 S.W.3d 48, 54-55 (Mo. banc 2008) (citing *Missouri Pac. R. Co. v. Whitehead & Kales*, 566 S.W.2d 466, 472 (Mo. banc 1978)). To maintain an action for contribution, both the party seeking contribution and the "defendant against whom contribution is sought must be . . . tortfeasor[s], originally liable to the plaintiff-injured party." *Gramex*, 89 S.W.3d at 442 (internal quotations omitted); *see also* MO. REV. STAT. §

537.060. Movants seek dismissal on the grounds that (i) no privity exists between B&G or the JV and either Christner or IMEG and (ii) B&G's claims are barred by the economic loss doctrine.

Lack of Privity

The parties agree that no contract existed between B&G or the JV and Movants. Instead, it appears that Christner contracted directly with the VA and then retained IMEG as a subcontractor. Therefore, Movants suggest, B&G's "negligence claims . . . are barred by the general common law rule that a defendant who was not contracted with another owes no legal duty in tort to a plaintiff who was not a party to the contract." (Doc. 73 at 6). B&G argues this Court should recognize an exception to this rule based on factors identified by the Supreme Court of Missouri in *Westerhold v. Carroll*, 419 S.W.2d 73 (Mo. 1967). In addressing this question, the parties extensively analyze Missouri precedent concerning when architects owe a duty to third parties with whom they lack privity. *See, e.g.*, *Fleischer v. Hellmuth, Obata & Kassabaum, Inc.*, 870 S.W.2d 832 (Mo. Ct. App. 1993); *Chubb Grp. of Ins. Cos. v. C.F. Murphy & Assocs., Inc.*, 656 S.W.2d 766 (Mo. Ct. App. 1983).

At the outset, the Court wishes to clarify some apparent confusion. B&G has not brought independent negligence claims against Movants; instead, B&G seeks contribution for any liability it may owe to ACE. To establish its claim for contribution, B&G must therefore demonstrate that Christner and IMEG are "tortfeasor[s] originally liable to the plaintiff-injured party." *Gramex*, 89 S.W.3d at 442. In other words, B&G must allege negligence by Christner and IMEG towards the JV (and accordingly ACE as its assignee). *See Miles ex rel. Miles v. Rich*, 347 S.W.3d 477, 482 (Mo. Ct. App. 2011). Movants' briefing suggests it is relevant that B&G has no contractual privity with either party. (Doc. 73 at 7). But whether Movants owed any duty to B&G is irrelevant to

B&G's claim for contribution. Missouri courts' analysis of the duty requirement in cases involving claims for contribution makes this clear.

In *Miles ex rel. Miles v. Rich*, a dog bite victim ("Ms. Miles") filed a personal injury action against the dog's owner ("Ms. Rich"). *Id.* at 479. Ms. Rich proceeded to file a third-party claim for contribution against the Humane Society of Missouri ("Humane Society") essentially alleging that the Humane Society negligently provided her an aggressive dog. The Missouri Court of Appeals noted that "in order for Ms. Rich's petition to state a claim for contribution she must allege actionable negligence by the Humane Society *toward Ms. Miles*," the original plaintiff and dog-bite victim. *Id.* at 482 (emphasis added). The court dismissed the claim for contribution after finding that the Humane Society owed no duty to the plaintiff. *Id.* at 484 ("The claim that the humane society was negligent in discharging a duty owed to Ms. Rich, rather than to Ms. Miles, fails to state a claim in contribution."). Similarly, B&G's claim for contribution depends on Movants' duty to the JV, not B&G. *See also Burrell v. O'Reilly Auto., Inc.*, 175 S.W.3d 642 (Mo. Ct. App. 2005) (evaluating contribution claim by assessing whether third-party defendant owed duty to plaintiff, not third-party plaintiff).

The core question before this Court is whether Movants' lack of privity with the JV precludes B&G's contribution claims. The existence of duty is a "question of law, and therefore, a question for the court alone." *Lumbermens Mut. Cas. Co. v. Thornton*, 92 S.W.3d 259, 266 (Mo. Ct. App. 2002). "Generally, a defendant who has contracted with another owes no duty to a plaintiff who is not a party to that agreement, nor can a non-party sue for negligent performance of the contract." *Captiva Lake Invs., LLC v. Ameristructure, Inc.*, 436 S.W.3d 619, 626 (Mo. Ct. App. 2014) (citation omitted). This rule of privity "is designed to protect contractual parties from exposure to unlimited liability and to prevent burdening the parties with obligations they have not

voluntarily assumed." *Owens v. Unified Investigations & Scis., Inc.*, 166 S.W.3d 89, 92 (Mo. Ct. App. 2005) (citations omitted). Movants suggest that dismissal is warranted based on a straightforward application of the rule of privity.

But this "rule requiring privity has not been followed blindly and without exception." *Westerhold*, 419 S.W.2d at 77. Instead, Missouri courts consistently hold that the "liability of a contractual party to those not in privity is determined on a case-by-case basis," and the "existence and scope of the duty is determined by the contractual obligations the defendant undertook and the circumstances of the case." *Owens*, 166 S.W.3d at 92 (citations omitted); *see also Kaplan v. U.S. Bank, N.A.*, 166 S.W.3d 60, 70 (Mo. Ct. App. 2003). As early as 1967, the Supreme Court of Missouri acknowledged that "so many exceptions have been engrafted upon the rule that it has been said, perhaps too broadly, that the exceptions have swallowed the rule." *Westerhold*, 419 S.W.2d at 77 (internal quotations omitted). Common exceptions include cases involving imminently dangerous activities or fraud, among others. *Id.* In *Westerhold*, the court performed a "balancing of various factors" including (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blame attached to the defendant's conduct; and (6) the policy of preventing future harm. *Id.* at 81.

Movants rely heavily on *Fleischer v. Hellmuth, Obata & Kassabaum, Inc.*, 870 S.W.2d 832 (Mo. Ct. App. 1993), which is similar to this matter in many respects. In *Fleischer*, the owner of a vessel entered separate contracts with a construction manager and architecture firm. A contractual dispute arose between the vessel owner and construction manager, and the vessel owner obtained a substantial damages award. The construction manager proceeded to sue the

- 7 -

architecture firm for professional negligence. The court held that "an architect owes no tort duty of care and is not liable to a general contractor or construction manager for damages for economic losses arising as a result of the architect's negligent performance of its contract with the owner." *Fleischer*, 870 S.W.2d at 834. Movants argue that the *Fleischer* decision unequivocally demonstrates they had no duty toward the JV, and B&G's contribution claims accordingly fail as a matter of law. The Court certainly agrees that, based on the clear holding of *Fleischer*, B&G faces an uphill battle in attempting to establish Movants' duty towards the JV.

But the Court also notes that the *Fleischer* decision came on appeal following a jury verdict in favor of the construction manager. The *Fleischer* court specifically acknowledged that exceptions to the rule of privity must be considered "on a case-by-case basis . . . depending upon the differing conditions and circumstances to be found in individual cases," and only rendered its decision "on the facts of this case." *Id.* at 834-35, 837 (quoting *Westerhold*, 870 S.W.2d at 78). After careful review of applicable precedent, including those cases cited by Movants, it appears that the vast majority of relevant decisions on this issue have come at the summary judgment stage or on appeal following trial. *See, e.g.*, *Captiva Lake Invs.*, 436 S.W.3d 619 (summary judgment); *Hardcore Concrete, LLC v. Fortner Ins. Servs., Inc.*, 220 S.W.3d 350 (Mo. Ct. App. 2007) (trial); *Owens*, 166 S.W.3d 89 (summary judgment); *Miller v. Big River Concrete, LLC*, 14 S.W.3d 129 (Mo. Ct. App. 2000) (reversing grant of summary judgment); *Baublit v. Barr & Riddle Eng'g Co., Inc.*, 768 S.W.2d 233 (Mo. Ct. App. 1989) (summary judgment); *Fleischer*, 870 S.W.2d 832 (trial). B&G, meanwhile, relies on two cases where the trial courts were reversed after granting a motion to dismiss based on lack of privity. *Westerhold*, 419 S.W.2d 73; *Chubb Grp. of Ins. Cos. v. C.F. Murphy & Assocs., Inc.*, 656 S.W.2d 766 (Mo. Ct. App. 1983).

At this juncture, the Court has minimal information regarding the relationship, if any, between Movants and the JV (beyond that they lacked privity). B&G specifically alleges, for example, that Movants' design was "obviously intended to affect [the JV] given that [the JV] was responsible for the construction of that design, and [the JV] ultimately sustained damages resulting from flaws in that design." (Doc. 76 at 5). The Court cannot meaningfully consider the *Westerhold* factors, such as foreseeability of harm or connection between Movants' conduct and the injury suffered, without additional information.

While the existence of duty is a question of law, applicable precedent demonstrates that such question can depend substantially on the facts of the particular case. The Eighth Circuit has recently held that foreseeability, as incorporated into the analysis of duty, may be a fact question for the jury not appropriate for resolution on summary judgment under Missouri law. *Scott v. Dyno Nobel, Inc.*, 967 F.3d 741, 748 (8th Cir. 2020); *see also Lopez v. Three Rivers Elec. Co-op, Inc.*, 26 S.W.3d 151, 156 n.1 (Mo. banc 2000) ("In some cases, the jury may be charged with determining whether facts exist that may give rise to a finding of foreseeability and, in turn, duty."). The court recognized that treating foreseeability as a pure question of law may place courts "in the peculiar position . . . of deciding questions, as a matter of law, that are uniquely rooted in the facts and circumstances of a particular case." *Id.* at 745 (quoting *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 784 N.W.2d 907, 914 (Neb. 2010)). Movants' attempt to distinguish the particular facts of *Westerhold* in their reply only further convinces the Court that granting the motion to dismiss would be inappropriate. (Doc. 80 at 2). Accordingly, the Court cannot say as a matter of law at this early stage of litigation that B&G's contribution claims against Movants fail due to lack of privity. Movants may raise this argument again at summary judgment after further factual development.

Economic Loss Doctrine

The economic loss doctrine "prohibits a party from seeking to recover in tort for economic losses that are contractual in nature." *Graham Const. Servs. v. Hammer & Steel, Inc.*, 755 F.3d 611, 616 (8th Cir. 2014) (citation omitted); *see also Captiva Lake Invs.*, 436 S.W.3d at 628 (citation omitted) ("Recovery in tort for pure economic damages are only limited to cases where there is personal injury, damage to property other than that sold, or destruction of the property sold due to some violent occurrence."). Movants contend that B&G's "negligence claims . . . are barred under the longstanding application of the economic loss doctrine." (Doc. 73 at 10). B&G responds that the economic loss doctrine is not applicable because the alleged damages are not contractual in nature and Missouri courts recognize an exception in the case of property damage.

At this early stage of litigation, it does not appear to the Court that the economic loss doctrine necessarily bars B&G's claims for contribution.[2] Movants contend that ACE and B&G's claims "seek[] purely economic damages which arise out of contract." (Doc. 73 at 10). Yet Movants also repeatedly highlight that "[t]here was never any agreement between Christner or IMEG and [the] JV." (*Id.* at 12). Clearly the alleged negligence by Movants relates to their contract with the VA, but it is unclear whether such relationship renders a theoretical professional negligence claim by the JV "contractual in nature." *Graham Const. Servs.*, 755 F.3d at 616. As framed by B&G, Movants "attempt to conflate economic losses which are *contractual in nature* with property damages tangentially related to a contractual relationship." (Doc. 76 at 7) (emphasis

---

[2] The parties have not specifically addressed whether the economic loss doctrine applies to claims for contribution. Missouri courts have consistently recognized that contribution "is an equitable duty rather than contractual." *Kirk King, King Const., Inc. v. Cont'l W. Ins. Co.*, 123 S.W.3d 259, 268 (Mo. Ct. App. 2003) (citation omitted); *see also Flooring Sys., Inc. v. Beaulieu Grp., LLC*, No. 4:15-CV-1792 (CEJ), 2016 WL 2910267, at *4 (E.D. Mo. May 19, 2016) (applying Pennsylvania law) ("Contribution is not a recovery for the tort, but rather it is the enforcement of an equitable duty to share liability."); *Cannon Techs., Inc. v. Sensus Metering Sys., Inc.*, 734 F. Supp. 2d 753, 773 (D. Minn. 2010) (recognizing Minnesota's economic loss doctrine does not apply to contribution claims). The Court assumes without deciding that the economic loss doctrine may bar a claim for contribution.

in original). It would be a bizarre result to potentially find that Movants owed the JV a non-contractual duty, but any damages are barred by the economic loss doctrine, which prohibits recovery in tort for economic losses which are contractual in nature.

Though not addressed in B&G's response, other exceptions to the economic loss doctrine also apply to this case. First, Missouri courts have consistently held that the doctrine "originated in cases arising under the [U.C.C.], making it inapplicable to contracts for services." *Heartland Med., LLC v. Express Scripts, Inc.*, No. 4:17-CV-2873 JAR, 2018 WL 4216669, at *2 (E.D. Mo. Sept. 5, 2018) (citations omitted); *see also Steadfast Ins. Co. v. ARC Steel, LLC*, No. 16-3214-CV-S-SRB, 2019 WL 2090696, at *3 (W.D. Mo. May 13, 2019). While the parties have not addressed this issue, it appears clear to the Court that Movants' services to the VA would not qualify as a sale of goods under the U.C.C.

Second, the economic loss doctrine typically "does not apply and preclude tort liability in an action based on the negligent rendition of services by a professional." *City of Kennett v. Wartsila North America, Inc.*, No. 4:05-CV-114 HEA, 2005 WL 3274334, at *2 (E.D. Mo. Dec. 2, 2005) (citation omitted); *see also Trademark Med., LLC v. Birchwood Labs., Inc.*, 22 F. Supp. 3d 998, 1002 (E.D. Mo. 2014) (citation omitted) ("Some Missouri courts have recognized specific exceptions in cases involving . . . negligence in providing professional services."); *Westfield, LLC v. IPC, Inc.*, 816 F. Supp. 2d 745, 750 (E.D. Mo. 2011) (collecting cases). *But see OS33 v. CenturyLink Commc'ns, LLC*, 350 F. Supp. 3d 807, 815-16 (E.D. Mo. 2018) (applying economic loss doctrine to services contract). Courts applying Missouri law have specifically held that claims for negligent rendition of architectural services are not barred by the economic loss doctrine. *Bryant v. Murray-Jones-Murray, Inc.*, 653 F. Supp. 1015 (E.D. Mo. 1985); *Bus. Men's Assur. Co. of America v. Graham*, 891 S.W.2d 438, 454 (Mo. Ct. App. 1994). For these reasons, the Court

finds that the economic loss doctrine does not mandate dismissal of B&G's contribution claims against Movants as a matter of law. Because neither the "no privity-no duty rule" nor the economic loss doctrine necessarily bars B&G's contribution claims, the Court will deny Movants' motion to dismiss.

Accordingly,

**IT IS HEREBY ORDERED** that Third-Party Defendants Christner, Inc. and IMEG Corp.'s Joint Motion to Dismiss (Doc. 72) is **DENIED**.

Dated this 17th day of March, 2022.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE